**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

STATE OF WISCONSIN,

                    Plaintiff,                              Case No. 26-cv-378

v.

KALSHI INC.,
KALSHIEX, LLC,
KALSHI KLEAR, INC.,
KALSHI KLEAR, LLC,
KALSHI TRADING, LLC,
ROBINHOOD MARKETS, INC.,
ROBINHOOD DERIVATIVES, LLC,
ROBINHOOD SECURITIES, LLC,
COINBASE GLOBAL, INC.,
COINBASE FINANCIAL MARKETS, INC., and
DOES 1-20,

                    Defendants.

---

**NOTICE OF REMOVAL**

---

Defendants Kalshi, Inc., KalshiEX, LLC, Kalshi Klear, Inc., Kalshi Klear, LLC, and Kalshi Trading, LLC (together, the "Kalshi Defendants") hereby remove the above-captioned action from Dane County Circuit Court, Case No. 2026CV001284, to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1331, 1441, and 1442. Defendants Robinhood Markets, Inc., Robinhood Derivatives, LLC, and Robinhood Securities, LLC (together, "Robinhood") and Coinbase Global, Inc. and Coinbase Financial Markets, Inc. (together, "Coinbase") consent to removal. *See* Exhibits 1–2. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1442.

By filing this Notice of Removal, the Kalshi Defendants do not waive any defenses they have to this action whether in state or federal court, including, but not limited to, improper service of process or lack of personal jurisdiction. The Kalshi Defendants reserve the right to amend or

supplement this Notice of Removal.

In support of the notice of removal, the Kalshi Defendants state as follows:

I.    **BACKGROUND**

A.    **The Kalshi Defendants**

1.    KalshiEX is a financial services company that operates a federally regulated derivatives exchange and prediction market on which users can buy and sell financial products known as "event contracts."  Event contracts allow users to take "yes" or "no" positions on the outcome of specified events, such as which candidate will win an election or whether the seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage.  KalshiEX also offers event contracts based on sporting and other events.  Event contracts are a type of "swap" within the meaning of the Commodity Exchange Act of 1936, 7 U.S.C. § 1, *et seq.* ("CEA").  *See* 7 U.S.C. §§ 1a(47)(A)(ii) (defining "swap" to include "any agreement, contract, or transaction . . . that provides for any . . . payment[] or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"); *KalshiEX, LLC v. Flaherty* (*Flaherty II*), ____ F.4th ____, 2026 WL 924004, at *2 (3d Cir. Apr. 6, 2026) ("'[S]wap' includes event contracts.").

2.    KalshiEX's exchange operates as a designated contract market ("DCM") pursuant to an order of the Commodity Futures Trading Commission ("CFTC").[1]   Under the CEA, the CFTC has exclusive jurisdiction to regulate transactions, including swaps transactions, on DCMs.  *See* 7 U.S.C. § 2(a)(1)(A); *see also Flaherty II*, 2026 WL 924004, at *2 ("The [CEA] preempts state laws that directly interfere with swaps traded on DCMs.  Kalshi's [event contracts] are swaps traded on a CFTC-licensed DCM, so the CFTC has exclusive jurisdiction."); *Merrill Lynch, Pierce, Fenner &*

---

[1]    *See* CFTC, *CFTC Designates KalshiEX as a Contract Market*, Release No. 8302-20 (Nov. 4, 2020), https://www.cftc.gov/PressRoom/PressReleases/8302-20; Order, *In re KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020), https://www.cftc.gov/filings/documents/2020/orgkexkalshidesignation201103.pdf.

*Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982) (with the CEA, "the Commission was given exclusive jurisdiction over commodity futures trading").

3.     Kalshi Klear LLC ("Kalshi Klear") provides clearing services for event contracts traded on KalshiEX's DCM.  Since August 2024, Kalshi Klear has operated as a derivatives clearing organization ("DCO") pursuant to an Order of the CFTC pursuant to the CEA.[2]  Kalshi Klear Inc. is the sole member of Kalshi Klear.

4.     Kalshi Trading participates on and provides liquidity at times for contracts traded on KalshiEX.  Like other market participants, Kalshi Trading is a member of KalshiEX's exchange and subject to KalshiEX's rules.

5.     Kalshi Inc. is the parent holding company of KalshiEX, Kalshi Klear Inc., and Kalshi Trading.

### B.     Summary of the Complaint

6.     On April 23, 2026, the State of Wisconsin, through the Attorney General of Wisconsin ("Plaintiff"), filed a Complaint to Abate Public Nuisance (the "Complaint") against the Kalshi Defendants, Robinhood, Coinbase, and unknown Doe defendants (together, "Defendants") in Dane County Circuit Court.  A copy of the Complaint is attached hereto as Exhibit 3.

7.     Plaintiff's single claim for relief is based on the alleged violation of Wisconsin's public nuisance statute, Wis. Stat. § 823.02.  Plaintiff alleges that Defendants collectively facilitated unlawful gambling by providing services allowing Wisconsin residents to trade event contracts offered on KalshiEX's DCM.

8.     Specifically, Plaintiff alleges that by facilitating trading of sports event contracts on a federally registered DCM, Defendants have committed "repeated and ongoing" violations of Wisconsin's commercial gambling statute, Wis. Stat. § 945.03(1m), which constitutes "per se a public nuisance."  Ex. 3, ¶ 92.

---

[2]     *See* CFTC, *CFTC Grants Kalshi Klear LLC DCO Registration*, Release No. 8957-24 (Aug. 29, 2024) https://www.cftc.gov/PressRoom/PressReleases/8957-24, Order of Registration, *In re Kalshi Klear LLC For Registration as a Derivatives Clearing Organization* (Aug. 28, 2024), Kalshi Klear LLC Order of Registration as a DCO 8-28-24 (1).pdf.

9.      As relief, Plaintiff seeks: (i) a declaratory judgment decreeing Defendants' operations in Wisconsin to be a public nuisance; (ii) a preliminary and permanent injunction enjoining and restraining Defendants and their officers, employees, agents, successors, and anyone acting on their behalf from making sports-related event contracts available for trading by customers located in Wisconsin; and (iii) any other relief the court deems just and proper.  Compl. at 33–34.

10.     The Kalshi Defendants have not yet been served with the Complaint.  Accordingly, the Kalshi Defendants' time to respond to the Complaint by answer or motion has not expired, and the Kalshi Defendants have not served or filed an answer or motion.

C.      **Kalshi is Already Litigating Identical Issues in Federal Court**

11.     This case raises issues of federal law substantially similar to those KalshiEX has been litigating in federal courts across the country since March 2025.  *E.g.*, *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575 (D. Nev.).  Appeals on similar issues are pending in the Fourth, Sixth, and Ninth Circuits.  *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.).  And a motion to dismiss and motion for preliminary injunction are currently pending in this Court in an action alleging violations of federal and tribal law brought by the Ho-Chunk Nation against KalshiEX and Kalshi Inc. last summer.  *See generally* Compl., *Ho-Chunk Nation v. Kalshi Inc.*, No. 25-cv-00698-WMC (W.D. Wis. Aug. 20, 2025).

12.     Significantly, the Third Circuit recently ruled in KalshiEX's favor, holding that the CEA "preempts state laws that directly interfere with swaps traded on DCMs," including KalshiEX's sports-event contracts.  The Court explained that "Kalshi's sports-event contracts fit comfortably" within the CEA's definition of "swap" because "[t]he outcome of a sports event certainly can be associated with a potential financial, economic, or commercial consequence." *Flaherty II*, 2026 WL 924004, at *2–3.

13.     The CFTC and the U.S. Department of Justice ("DOJ") also recently filed suit in Arizona, Connecticut, and Illinois to enjoin those states from enforcing state laws against DCMs on preemption grounds and submitted an amicus brief in the Ninth Circuit making the same points.  *See*

4

Compl., *United States v. Arizona,* No. 2:26-cv-02246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1 ("Ariz. CFTC Compl."); Compl., *United States v. Connecticut*, No. 3:26-cv-00498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; and Complaint, *United States v. Illinois*, No. 1:26-cv-03659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1 (collectively, the "CFTC Complaints"); *see also* Amicus Brief of Commodity Futures Trading Commission (CFTC Amicus Br.) at 19, 21, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 (confirming that the CEA's exclusive jurisdiction provision "preempts application of state gambling laws to event contracts trad[ed] on DCMs" and that sports event contracts fall "comfortably" within the CFTC's exclusive jurisdiction).  Two weeks ago, a federal district court temporarily enjoined Arizona state regulators, at the request of the CFTC and DOJ, from proceeding with any criminal or civil actions to enforce their preempted state gaming laws against DCMs.  *KalshiEX LLC v. Johnson*, 2026 WL 976055, at *2 (D. Ariz. Apr. 10, 2026).

14.     Plaintiff filed its Complaint against Defendants with no warning or dialogue. Plaintiff's rush to file this action ignores that whether the CEA preempts state gaming regulations "raise[s] serious questions," *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *12 (D. Nev. Nov. 24, 2025) *appeal filed*, 25-7516 (9th Cir. Nov. 28, 2025), which have divided the federal courts.  *See Flaherty II*, 2026 WL 924004, at *2-3, *7 (holding state law preempted and affirming preliminary injunction in KalshiEX's favor); *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202 at *7 (N.D. Cal. Nov. 10, 2025) (rejecting argument that KalshiEX's event contracts are unlawful gambling); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) (finding "that Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies.").  *But see Hendrick*, 2025 WL 3286282, at *14 (dissolving KalshiEX's preliminary injunction); *KalshiEX LLC v. Schuler*, 2026 WL 657004, at *10 (S.D. Ohio Mar. 9, 2026) (denying KalshiEX's application for preliminary injunction).

## II.     REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1441

15.     Under 28 U.S.C. § 1441, any civil action filed in state court over which a federal court has original jurisdiction may be removed to the federal district court for the district in which the state court action is pending.  This Court has federal-question jurisdiction under 28 U.S.C.

§ 1331 because Plaintiff's claims require the adjudication of federal law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005).

16.    ***Federal law is necessarily raised.*** Plaintiff's claim requires proof that the event contracts at issue are not bona fide commodities transactions under federal law, which necessarily raises substantial and disputed federal-law issues. Plaintiff's Complaint is premised on Defendants' activities constituting "commercial gambling" in violation of Wis. Stat. § 945.03(1m). Plaintiff alleges that facilitating transactions in event contracts qualifies because using Defendants' services to transact in event contracts represents a "bet" within the meaning of Wis. Stat. § 945.01(1). But Wisconsin's statutory definition of bet states that "a bet does not include [b]ona fide business transactions which are valid under the law of contracts including without limitation[ ] [c]ontracts for the purchase or sale at a future date of securities or other commodities[.]" *Id.* § 945.01(1)(a)(1).

17.    This definition necessarily raises the federal question of whether KalshiEX's event contracts are bona fide business transactions that are "valid" and qualify as contracts for the purchase or sale at a future date of commodities. KalshiEX's event contracts qualify because they are federally regulated swap transactions traded on a federally regulated exchange. Plaintiff's claim thus turns on the legality under federal statutes of federally regulated commodities transactions traded on a federally regulated exchange.

18.    Other portions of Wisconsin's statutory scheme underscore that Plaintiff's Complaint necessarily raises a federal question. Wisconsin's Uniform Commercial Code defines a commodity contract as "a commodity futures contract, an option on a commodity futures contract, a commodity option, or another contract if the contract or option is [t]raded on or subject to the rules of a board of trade that has been designated as a contract market for such a contract pursuant to federal commodities laws." Wis. Stat. § 409.102. Plaintiff's claim requires addressing the federal-law issue of whether KalshiEX is a regular board of trade designated as a contract market pursuant to the CEA.

19. This is because Plaintiff's claim is based on alleged transactions on a "board of trade"—*i.e.*, the trading of federally regulated derivatives contracts on KalshiEX's federally registered exchange. 7 U.S.C. § 1a(6) ("The term 'board of trade' means any organized exchange or other trading facility."). Thus, Plaintiff can prevail only if it can prove, among other things, that the event contracts at issue here were *not* traded on a board of trade designated as a contract market pursuant to federal commodities laws. Wis. Stat. § 409.102(1)(dm). Whether Plaintiff can make that showing depends on KalshiEX's status under the CEA and the CFTC's implementing regulations. "The resolution of this case" thus "turns on [that] issu[e] of federal law." *Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015).

20. ***Federal law is disputed.*** The federal legal issues in this action are substantially similar to those actively in dispute in federal courts across the country. *See supra* ¶¶ 11–14. Ultimately, whether trading event contracts on a federally regulated DCM is conduct subject to Wisconsin gambling laws is "the central point of dispute" in this case. *Gunn*, 568 U.S. at 259.

21. ***The federal question is substantial.*** The question raised under federal law is substantial, as Plaintiff's claim alleges that a federally regulated DCM like KalshiEX must comply with Wisconsin gambling laws. *See* Ariz. CFTC Compl. ¶ 6 ("Arizona's attempt to shut down federally regulated DCMs intrudes on the exclusive federal scheme Congress designed to oversee national swaps markets."). For Plaintiff to succeed on its claim, the Court would need to adopt an interpretation of the CEA that significantly impacts the CFTC's exclusive jurisdiction over DCMs. *Gunn*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute).

22. ***Capable of resolution without disrupting the federal-state balance.*** This Court is best positioned to resolve the issue of whether Defendants' activities are authorized by federal law and, therefore, subject to exclusive federal regulation. *See* Ariz. CFTC Compl. ¶ 1 (stating that the CEA "designates the CFTC as the federal agency with 'exclusive jurisdiction' over the regulation of futures, options, and swaps traded on federally regulated exchanges"); *Curran*, 456 U.S. at 355–56, 386 (the CFTC has "exclusive jurisdiction over commodity futures trading"); *In re Int'l Rate Swaps*

*Antitrust Litig.*, 261 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (explaining that the CEA was amended in 2010 to "establish a comprehensive new regulatory framework for swaps" and the CFTC was "vested . . . with exclusive jurisdiction to implement that framework" (citation modified)) (citation omitted). Because the event contracts at issue are swaps and are subject to exclusive federal regulation, they cannot be regulated under state gaming laws. *Flaherty II*, 2026 WL 924004, at *2–3, 7. Such a resolution by this Court, therefore, will not disrupt the federal-state balance but will instead reinforce the harmonious application of federal and state laws, consistent with the Supremacy Clause. U.S. Const. art. VI, cl. 2.

## III.   REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(A)(2)

23.    As to KalshiEX and Kalshi Klear, removal is also proper pursuant to 28 U.S.C. § 1442(a)(2), which authorizes removal of an action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States."

24.    "The federal officer removal statute is not 'narrow' or 'limited,' and the statute must be 'liberally construed.'" *Hammer v. U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 527 (7th Cir. 2018) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)).

25.    This action is removable under this provision because KalshiEX's designation as a DCM and Kalshi Klear's designation as a DCO under the CEA constitute property derived from the CFTC, and Plaintiff's action directly affects the validity of the CEA.

26.    ***KalshiEX and Kalshi Klear are property holders with title derived from the CFTC.*** The CFTC approved KalshiEX LLC's designation as a DCM and Kalshi Klear's designation as a DCO pursuant to the CEA on November 4, 2020 and August 29, 2024, respectively. *See supra* ¶¶ 2–3, notes 1–2.

27.    Although "property" is not defined in § 1442(a)(2), property is generally understood to include "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised" and "every kind of valuable right and interest that can be made the subject of ownership." *Property*, Black's Law Dictionary (12th ed. 2024).

8

28.     A government license grants a property right if the license cannot be revoked before the end of its term without cause. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009).

29.     KalshiEX's and Kalshi Klear's designations as a DCM and DCO, respectively, create a clearly defined property right: it enables those entities to provide services for the trading or processing of swaps.  7 U.S.C. § 7b-3(a)(1) ("No person may operate a facility for the trading or processing of swaps unless the facility is registered as a . . . [DCM] under this section."); *see also* 17 C.F.R. § 38.3 (setting forth requirements and procedures for registration as a DCM); Ariz. CFTC Compl. ¶ 32 ("The CEA requires that . . . commodity derivative transactions [ ] be conducted on exchanges designated by, or registered with, the CFTC."); *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992) ("nature and extent" of the rights afforded by a federal license were "capable of precise definition" where they provided a privilege to a limited group of recipients).

30.     KalshiEX's and Kalshi Klear's designations as a DCM and DCO are also capable of exclusive possession or control.  The rights granted by those designations are restricted to KalshiEX and Kalshi Klear unless transferred by the holder. *See* 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. § 38.3(d)(1) (providing for "transfer of [a DCM's] designation from its current legal entity to a new legal entity"); 17 C.F.R. § 39.3(a)(1) (setting forth procedure for an entity's registration as a DCO); *Kalitta*, 958 F.2d at 903 ("Nor are there any conceptual or practical difficulties in restricting the right to the holder of the [federal license], or to someone who is a transferee or licensee.  In fact, the federal regulations contemplate exactly that.  [The licensee's] interest is thus precisely defined and capable of exclusive possession."); *Shackleford v. United States*, 262 F.3d 1028 (9th Cir. 2001) ("The right to transfer is one of the most essential sticks in the bundle of rights that are commonly characterized as property." (citation omitted)).

31.     Finally, KalshiEX's and Kalshi Klear's designations establish that they have a legitimate claim of exclusivity over those designations. *See* 17 C.F.R. §§ 38.3(d)(1), 39.3(a)(1); *see also* Title, Black's Law Dictionary (12th ed. 2024) (defining "title" as "the legal link between a

person who owns property and the property itself"); *Mfrs. & Traders Tr. Co. v. Fidelity Nat'l Title Ins. Co.*, 2012 WL 5462887, at \*4 (D. Or. Nov. 4, 2012) (defining "title" as "the instrument constituting . . . evidence of the fullest legal right to control and dispose of property" (citation modified)). KalshiEX's legitimate claim of exclusivity is further evidenced by its expenditure of "considerable time and effort" in complying with the CFTC's regulations and in preparing submissions to the CFTC for self-designation. *Kalitta*, 958 F.2d at 903.

32. As registered entities, KalshiEX's designation as a DCM and Kalshi Klear's designation as a DCO also come with the procedural protections typical of property rights. *See* 7 U.S.C. § 1a(40) (defining registered entity). For example, the designation as a contract market cannot be suspended or revoked by the CFTC without cause and only after providing KalshiEX notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . shall be cause [for suspension or revocation] . . . ." (emphasis added)); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market). Those requirements reinforce that KalshiEX has a property interest in its designation as a contract market. *See, e.g.*, *Pro's Sports Bar & Grill, Inc*, 589 F.3d at 870 (holding that a license is a property right "within the meaning of the due process clause" because it is revocable only for cause and following a hearing).

33. ***Plaintiff's action affects the validity of the CEA.*** The removal statute's purpose is to provide "a layer of protection from local prejudice for those acting under federal authority so that the federal government can function." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053–54 (W.D. Wash. 2021) (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)); *see also Howard v. Lyons*, 360 U.S. 593, 597 (1959); *Rothner v. City of Chicago*, 879 F.2d 1402, 1407 (7th Cir. 1989) (removal statutes are intended to "protect litigants against local prejudice, influence, and discrimination"); *Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948, 953 (C.D. Ill. 2023) ("The central purpose of the federal officer removal statute is to protect the federal government and its operations from potential interference by the states through proceedings in state court."). Thus, a lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Carney*,

551 F. Supp. 3d at 1053-54.

34.      Plaintiff's lawsuit would frustrate the CEA's aims.  The CEA provides for exclusive federal regulation of swap transactions on DCMs and seeks to avoid a patchwork of state regulation that conflicts with the CFTC's exclusive jurisdiction.  *See* 7 U.S.C. § 2(a)(1)(A); Ariz. CFTC Compl. ¶ 46 ("Congress recognized the need for uniform, nationwide regulation of futures and options markets because concurrent regulation by the states or other federal regulators such as the Securities and Exchange Commission could lead to 'total chaos.'"); *Flaherty II*, 2026 WL 924004, at *5 ("Congress created the CFTC and amended the Act to do away with the patchwork of state regulations and bring futures trading on DCMs under the exclusive jurisdiction of the CFTC."); *see also* H.R. Rep. No. 93-975, at 79 (1974) ("This bill will put all exchanges . . . under the same set of rules[.]"); Consolidated Pls.' Mot. for Prelim. Inj. & TRO (CFTC TRO Br.) at 2, 9-10, *KalshiEX LLC v. Johnson*, No. 2:26-cv-01715-MTL, Dkt. No. 49 (D. Ariz. Apr. 8, 2026) (Arizona's enforcement actions "undermine the uniform application of federal law" and threaten to subject DCMs to "a patchwork of 50 state regulations"—which is "precisely what Congress sought to avoid with the CEA"); CFTC Amicus Br. at 2.

35.      As an initial matter, KalshiEX's event contracts easily "fit within the [CEA]'s definition of 'swaps' subject to the CFTC's jurisdiction." *Flaherty II* at *3; *see* CFTC Amicus Br. at 14-18 (explaining that event contracts are "swaps" under the "plain language" of the CEA).  Because they are "swaps under the [CEA]," event contracts are "properly" regulated as "trading on a DCM (a form of futures trading) rather than as gambling (a broader and traditionally state-regulated field)." *Flaherty II* at *4.  Given this precise delineation of federal and state spheres, the regulation of KalshiEX's event contracts under state gambling laws—as Wisconsin seeks to do here—would create "a clash between a constitutional exercise of Congress's legislative power and conflicting state law." *Flaherty II* at 10 (citing *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018)); *see also* Ariz. CFTC Compl. ¶ 6 ("Prompted by the evolution of national financial markets and repeated conflicts with state law, Congress enacted the CEA, granting the CFTC exclusive jurisdiction to regulate those markets and enacting a comprehensive federal regulatory framework

11

that preempts state laws that attempt to regulate the operation of, or transactions on, CFTC-regulated exchanges."); *id.* ¶ 68 (state enforcement actions directly "conflicts" with the "exclusive governance" over event contracts that Congress granted to the CFTC); U.S. Const. art. VI, cl. 2.; *see also Flaherty II* at *4 (CEA field preempts application of state law to KalshiEX).

36.     Indeed, allowing Wisconsin to apply its gambling laws against Defendants would "subvert" the CEA, *see, e.g.*, Ariz. CFTC Compl. ¶ 12, and "directly conflict[] with the full purposes and objectives" of Congress. *Flaherty II* at *5; *see also* CFTC TRO Br. at 1.  Enforcement of Wisconsin's gambling laws "would create an obstacle to executing the [CEA] because such enforcement would prohibit Kalshi[EX], which operates a licensed DCM under the exclusive jurisdiction of the CFTC, from offering its . . . event contracts" in Wisconsin. *Flaherty II* at *5. This type of piecemeal "state regulation is exactly the patchwork that Congress replaced wholecloth by creating the CFTC." *Id.*  Furthermore, compliance with state-specific prohibitions on event contracts would be "impossible" for DCMs, because these prohibitions conflict with the "federal mandate to provide impartial national access." Ariz. CFTC Compl. ¶ 72; *see also* CFTC Amicus Br. at 26-27.

37.     This Action would also fundamentally "subvert" the "exclusive jurisdiction" of the CFTC over DCMs.  *See, e.g.*, Ariz. CFTC Compl. ¶ 12; *see also* CFTC TRO Br. at 6 ("This Court should enter a temporary restraining order and a preliminary injunction because Arizona gambling laws are preempted as applied to federally regulated DCMs listing swaps, and Arizona's aggressive enforcement of its preempted state laws . . . causes irreparable harm to the federal plaintiffs."); CFTC Amicus Br. at 2 (state enforcement actions constitute "fundamental threat to Congress's statutory design").  For nearly a century, Congress has occupied the field as to "the regulation of trading on a DCM." *Flaherty II* at *4.  That comprehensive regulatory scheme "has left no room" for supplementary state regulation, such as Wisconsin seeks to do here. *Id.* at *4 (citations omitted).

38.     In sum, this action affects the validity of the CEA in several ways.  This action would (i) create an obstacle to the accomplishment of Congress's objectives as set forth in the CEA; (ii) pose a "fundamental threat" to the CFTC's exclusive jurisdiction under the CEA; (iii) risk creating a

patchwork of state regulation that the CEA is designed to avoid; and (iv) risk invalidating the definition of "swap" in the CEA. *See* Ariz. CFTC Compl. ¶ 63 (listing same reasons in explaining why Arizona's criminal prosecution would affect the validity of the CEA). These effects would "subvert federal law" and fundamentally affect the validity of the CEA. *Id*. ¶ 12.

## IV.     REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(1)

39.     Removal is also proper as to all Defendants under 28 U.S.C. § 1442(a)(1) due to Plaintiff's artful pleading. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983); *Univ. of Wis. Hosp. & Clinics Auth. v. Sw. Cath. Health Network Corp.*, 2015 WL 402739, at *2 (W.D. Wis. Jan. 28, 2015) ("Artful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed in keeping the case in state court." (citation omitted)). Joinder of the CFTC—a necessary party here—would create removal jurisdiction under 28 U.S.C. § 1442(a)(1). Plaintiff's strategic failure to join the CFTC in this action cannot allow it to defeat jurisdiction. *Cf. Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 831 (7th Cir. 1987) ("Artful pleading by the plaintiff will not be allowed to conceal the true nature of the complaint." (citation omitted)).

40.     Wisconsin law is clear that the CFTC should have been joined in this action. Wis. Stat. § 803.03(1) provides that a person "shall be joined" if:

(a) In the person's absence complete relief cannot be accorded among those already parties; or

(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

(1) As a practical matter impair or impede the person's ability to protect that interest; or

(2) Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

41.     Each of those bases for joinder apply here. *First*, joinder is required under

§ 803.03(1)(a) because complete relief cannot be accorded among the parties without the CFTC's presence. KalshiEX, in particular, is subject to a federal mandate to provide "impartial national access" to its platform. CFTC TRO Br. at 18. In challenging state actions to regulate DCMs, the CFTC made clear that "state-imposed restrictions on access to markets" would "make it impossible for the regulated DCMs to comply with federal regulations." *Id*. Thus, relief cannot be adequately granted in the absence of the CFTC's participation concerning this issue.

42.     *Second*, joinder is also required under § 803.03(1)(b). As an initial matter, there can be no serious dispute that the CFTC "claims an interest relating to the subject" of this action. The CFTC has now brought three lawsuits against states seeking to apply their gaming laws to regulate event contracts offered on DCMs. *See generally* CFTC Complaints. The CFTC has also filed an amicus brief reinforcing that it has exclusive jurisdiction over DCMs. The CFTC has made clear that it has "at least two legally protected 'sovereign injuries'" from states' attempts to apply gambling laws to CFTC-regulated derivatives markets: (1) the invasion of the CFTC's exclusive jurisdiction over DCMs, and (2) the undermining of federal regulatory uniformity that Congress intended to achieve through the CEA. CFTC TRO Br. at 6-7.

43.     The failure to join the CFTC would "[a]s a practical matter impair or impede" the CFTC's "ability to protect that interest." *See* Wis. Stat. § 803.03(1)(b)(1). Wisconsin is seeking to fundamentally alter the CFTC's exclusive jurisdiction over DCMs but has strategically chosen not to name the CFTC as a party. Disposition of this action in the CFTC's absence also puts Defendants at a substantial risk of incurring inconsistent obligations by reason of the CFTC's interest. *See* Wis. Stat. § 803.03(1)(b)(2); *see also* CFTC TRO Br. at 18 ("If a state bans the contract, the DCM cannot fulfill its federal mandate to provide impartial national access. Other state-imposed restrictions on access to markets would similarly make it impossible for the regulated DCMs to comply with federal regulations.").

44.     As a result, Plaintiff was required to name the CFTC as a party in this proceeding. Had Plaintiff done so, removal would also have been proper under 28 U.S.C. § 1442(a)(1). Plaintiff "may not defeat removal" through artful pleading. *Franchise Tax Bd.*, 463 U.S. at 22.

14

## V.   THE KALSHI DEFENDANTS MEET THE PROCEDURAL REQUIREMENTS FOR REMOVAL

45.   Removal is timely.  Plaintiff filed the Complaint on April 23, 2026, and the Kalshi Defendants filed this Notice of Removal the next day.  The Kalshi Defendants have not yet been served with the Complaint.  28 U.S.C. §§ 1446(b)(1) and (c)(1); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

46.   Venue is proper pursuant to 28 U.S.C. §§ 130, 1441(a), 1442, and 1446(a) because the United States District Court for the Western District of Wisconsin is the federal judicial district court embracing Dane County Circuit Court, where the Complaint was filed.

47.   In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be promptly provided to Plaintiff and filed with Dane County Circuit Court.  A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit 4.

48.   No previous application has been made for the relief requested in this Notice of Removal.

## CONCLUSION

WHEREFORE, the Kalshi Defendants respectfully request that this case be removed from Dane County Circuit Court to the United States District Court for the Western District of Wisconsin and that this Court accept jurisdiction.  Robinhood and Coinbase consent to removal.  If any question arises as to the propriety of removal, the Kalshi Defendants respectfully request the opportunity to present oral argument.

15

DATED this 24th day of April, 2026.

By:

/s/ Sarah A. Zylstra
Sarah A. Zylstra, State Bar No. 1033159
**BOARDMAN & CLARK LLP**
1 South Pinckney Street, Suite 410
P.O. Box 927
Madison, Wisconsin 53701-0927
(608) 283-1741
szylstra@boardmanclark.com

Neal Katyal (*pro hac vice* forthcoming)
Joshua B. Sterling
William E. Havemann (*pro hac vice* forthcoming)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586
nkatyal@milbank.com
jsterling@milbank.com
whavemann@milbank.com

Grant R. Mainland
Andrew L. Porter (*pro hac vice* forthcoming)
Matthew J. Laroche (*pro hac vice* forthcoming)
Victor Hollenberg
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
gmainland@milbank.com
aporter@milbank.com
mlaroche@milbank.com
vhollenberg@milbank.com

*Attorneys for Defendants Kalshi, Inc., KalshiEX, LLC, Kalshi Klear, Inc., Kalshi Klear, LLC, and Kalshi Trading, LLC*